### UNITED STATES v. RUROEDE et al.

#### (District Court, S. D. New York.)

1. CONSPIRACY ⬤⇒43—ARREST—COMPLAINT—EXAMINATION.

Rev. St. § 1014 (Comp. St. 1913, § 1674), provides that an offender may be arrested and imprisoned or bailed by a commissioner, agreeable to the usual mode of process against offenders in the state where accused has been found, and Code Cr. Proc. N. Y. § 149, concerning proceedings before a committing magistrate, provides that depositions on which a warrant is issued must set forth the facts tending to establish the commission of the crime, and defendant's guilt. *Held*, that where a complaint on which

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

accused was arrested on information and belief charged that he did unlawfully, etc., conspire to defraud the United States, and to effect the object of the conspiracy defendants had an interview in the city of New York on December 31, 1914, and that the source of deponent's information and the grounds of his belief as to the facts were an official investigation, the disclosure of which would be contrary to public policy and injurious to the government's case, but would be presented in full at the hearing of the complaint, was fatally defective for failure to show in what respect the overt act constituted a violation of law.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. ☞43.]

**2. CRIMINAL LAW ☞213—INSUFFICIENT COMPLAINT—PRELIMINARY EXAMINATION—WAIVER.**

Accused by waiving preliminary examination did not waive his right to object that the complaint on which he was arrested failed to state an offense.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 431–433; Dec. Dig. ☞213.]

Application by Carl Ruroede, impleaded, etc., for discharge on habeas corpus. Writ sustained, and prisoner discharged.

H. Snowden Marshall, U. S. Atty., of New York City.
Charles A. Oberwager, of New York City, for defendants.

AUGUSTUS N. HAND, District Judge. [1] The prisoner was arrested upon a complaint by the Acting Division Superintendent of the Department of Justice, which stated:

"On information and belief that on or about the 15th day of November, 1914, the above-named defendants * * * unlawfully, willfully, knowingly and feloniously did conspire to defraud the United States and to effect the object of the said conspiracy the defendant Carl Ruroede did on the 31st day of December, 1913, at the city of New York * * * have an interview with the defendant John Aucher against the peace of the United States and their dignity and contrary to the form of the statute of the United States in such case made and provided.

"The source of deponent's information and the grounds for his belief as to the facts herein are based upon an official investigation thereof to disclose the nature of which would be contrary to public policy and would be injurious to the government's case and the same will be presented in full at the hearing upon this complaint."

The warrant issued by the commissioner for the arrest of Ruroede follows the exact language of the complaint in the description of the crime and the overt act.

The accused appeared before the commissioner and waived examination. He now comes before me on a writ of habeas corpus and seeks a discharge upon the ground that the complaint alleges no facts constituting a crime.

It is true that numerous cases hold that less precision is necessary upon an affidavit for commitment than in the case of an indictment; but nevertheless I think the rule is fundamental to the common law that a prisoner is entitled at all times to be apprised of the crime of which he is accused, and also of the acts charged constituting that crime.

It is to be observed that section 1014 of the Revised Statutes, under which the proceeding for the arrest of Ruroede was taken, provides that the offender may "by any commissioner   *   *   *   and agreeably to the usual mode of processs against offenders in such state (refer-ring to the state where the accused has been found), and at the expense of the United States, be arrested and imprisoned, or bailed, as the case may be, for trial before such court of the United States as by law has cognizance of the offense."

The late Judge Addison Brown, in the case of United States v. Greene (D. C.) 100 Fed. 941, following the opinion of Mr. Justice Curtis of the Supreme Court of the United States in the old case of United States v. Rundlett, 2 Curt. 41, Fed. Cas. No. 16,208, held that it was the effect of section 1014 to assimilate all proceedings for holding accused prisoners to answer before a court of the United States to proceedings had for similar purposes by laws of the state where the proceedings might take place.

Section 149 of the Code of Criminal Procedure of the state of New York, referring to proceedings before a committing magistrate, provides that the depositions upon which the warrant is issued "must set forth the facts   *   *   *   tending to establish the commission of the crime and the guilt of the defendant."

In the case of United States v. Greene, supra, Judge Brown held that where there had been an indictment in another district, and the United States had applied for a removal to that district under section 1014 of the Revised Statutes, there must be an independent proceeding before the commissioner in the jurisdiction from which the prisoner was sought to be removed for the purpose of ascertaining whether there was sufficient ground to commit and remove him. Judge Brown further held that an allegation, in the indictment in the foreign state (which paper was offered in evidence, as the sole basis for commitment), that the prisoner conspired to defraud the United States and as an overt act presented to a disbursing officer of the government fraudulent claims without any statement showing in what respect such claims were fraudulent, or any evidential facts or circumstances from which fraud could be found, was a defective allegation, and the court must discharge the accused. That case, where the indictment was treated as having the force of an affidavit before a committing magistrate, is a direct authority in this court for the position I have indicated, namely, that the overt act alleged must be connected with the crime in such a way as to indicate that a criminal act was performed.

As was said by Judge Andrews of the New York Court of Appeals in the extradition case of People ex rel. Lawrence v. Brady, 56 N. Y. 182, cited by the counsel for the accused:

"It is a reasonable rule, supported by obvious considerations of justice and policy, that when a surrender is sought upon proof, by affidavit, of a crime, the offense should be distinctly and plainly charged."

As was said in the case of United States v. Cruikshank, 92 U. S. at page 557, 23 L. Ed. 588:

"In criminal cases, prosecuted under the laws of the United States, the accused has the constitutional right 'to be informed of the nature and cause

of the accusation.' Amend. 6. In United States v. Mills, 7 Pet. 142 [8 L. Ed. 636], this was construed to mean that the indictment must set forth the offense 'with clearness and all necessary certainty, to apprise the accused of the crime with which he stands charged.' * * * The object of the indictment is: First, to furnish the accused with such a description of the charge against him as will enable him to make his defense, and avail himself of his conviction or acquittal for protection against a further prosecution for the same cause; and, second, to inform the court of the facts alleged, so that it may decide whether they are sufficient in law to support a conviction, if one should be had. For this, facts are to be stated, not conclusions of law alone. A crime is made up of acts and intent, and these must be set forth in the indictment, with reasonable particularity of time, place, and circumstances.

"It is a crime to steal goods and chattels; but an indictment would be bad that did not specify with some degree of certainty the articles stolen. This, because the accused must be advised of the essential particulars of the charge against him, and the court must be able to decide whether the property taken was such as was the subject of larceny."

See, also, U. S. v. Hess, 124 U. S. 483, 8 Sup. Ct. 571, 31 L. Ed. 516.

The affidavit in this case, while it does state the crime of conspiring to defraud the United States and does state an act which may have been an overt act in the commission of that crime, nowhere states any facts indicating in what respect the overt act constituted a violation of the law. This seems to me a fatal error on the face of the complaint, and, unless cured in some way, I am required to sustain the writ of habeas corpus.

[2] It is urged, however, by the United States attorney, that, inasmuch as the prisoner at the hearing before the commissioner waived examination, he is debarred now from complaining of his confinement pending an investigation by the grand jury. There is no doubt that a waiver of examination does debar a prisoner from thereafter questioning informalities or technical objections to the regularity of the proceeding; but I do not think that any cases cited by the United States attorney have gone so far as to hold that a waiver of examination cured a complaint which upon its face discloses no facts indicating the commission of a crime. While the government in any case is justified as far as possible in keeping secret its evidence until a matter has been submitted to the grand jury, it cannot, I think, sustain a warrant of arrest for any reason or under any circumstances, where neither the warrant nor the complaint state facts constituting the crime that is charged, even though the prisoner has at the hearing waived examination. His waiver will prevent him, as I have heretofore said, from objecting to informalities or irregularities in the warrant or in the complaint; but it does not, I think, debar him from attacking a process which does not upon its face state the facts which constitute the crime charged. The meaning of the waiver is, I think, simply this: The prisoner has a right to have evidence produced in support of the complaint and to produce evidence on his part in answer thereto; in other words, to have the benefit of a preliminary examination. If he does not desire to have it and waives it, he cannot thereafter claim that he should have had it. In other words, the waiver is as broad as the privilege and nothing more. He has never by any con-

duct of his waived the right to object to the fact of being held upon a complaint which states no cause of action and upon a process which is, therefore, void.

In the case of In re Mallison, 36 Kan. 725, 14 Pac. 144, cited by the United States attorney, it was held that the waiver of a preliminary examination amounted to a waiver of the right to bail and also of the right to have the facts of the alleged offense examined into on a writ of habeas corpus.

The case of Benjamin v. State of Florida, 25 Fla. 675, 6 South. 433, also cited by the prosecution, correctly holds that, where a preliminary examination is waived by the prisoner and the waiver accepted by the magistrate, the prisoner is precluded thereafter from "asserting in any subsequent proceeding anything he could not have asserted if the examination had taken place, or, in other words, he is at least in the same situation as he would be had an examination taken place; he cannot for his own advantage say that the examination did not take place, and on that ground attack the commitment which the magistrate may have adjudged. * * *"

In that case, however, it was distinctly held by the Supreme Court of Florida that the prisoner did not by waiving examination bar his right to apply for bail or to have a full inquiry upon a writ of habeas corpus into the facts of the case. The Florida case is therefore not an authority in any respect for the position urged by the United States attorney and seems to me quite contrary to the views he urges. Indeed, I think it goes too far in apparently holding that after a waiver of examination the accused may on a writ of habeas corpus controvert facts which are stated in a complaint that is good upon its face.

The case of People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383, 11 L. R. A. (N. S.) 528, 10 Ann. Cas. 309, correctly states the law. The court there said:

"If the information, which was laid before the magistrate, furnished no legal evidence of the commission of a crime by the relator, then he was illegally restrained of his liberty. If the facts shown did not warrant an inference by the magistrate of the existence of probable cause to believe that the crime charged had been committed, he was without jurisdiction to cause the arrest of the relator, and the latter was entitled to resort at once for his protection to the writ of habeas corpus. * * * He was not obliged to await an examination before the magistrate. The provision of the statute, in that respect, was for his benefit; in order that he might be informed of the charge and that he might have the opportunity to examine the witnesses and to make any statement in relation to the charge. * * * He could waive these proceedings, however, and immediately sue out the writs, that the legality of his detention under arrest might be inquired into. * * *"

The writ must be sustained, and the prisoner discharged.