## UNITED STATES ex rel. KING v. GOKEY et al.

District Court, N. D. New York. May 21, 1929.

L. M. Kellas, of Malone, N. Y., for relator.

O. D. Burden, U. S. Atty., of Syracuse, N. Y. (J. W. Genaway, Asst. U. S. Atty., of Malone, N. Y., of counsel), for defendants.

BRYANT, District Judge. Howard James King, the relator, is a citizen and resident of the Dominion of Canada. He is a farmer, and resides about three miles northerly or nearly northerly of a store known locally as "Ouimet's." This store is located on the International Boundary, and is situated partly in Canada and partly in the United States. In other words, it is an ordinary "line store."

On September 13, 1928, just before dark, United States immigration officers went to this store. They left their car concealed some distance from the line and proceeded to their rendezvous on foot. There is not any question but that they were looking for an opportunity to apprehend King. This fact is

not in any way disputed or questioned. They concealed themselves in close proximity to the store. In the early part of the evening, but after dark, King came to the place by auto and entered the store. There is not any claim that King, at the time of entry or while in the store, was committing or committed any illegal act. After about a half hour, King left the store. Immediately, or almost immediately, after coming through the door, he was seized by United States immigration officers, and after a sharp tussle was shackled and brought to the United States immigration office at Malone, N. Y., a distance of about 15 miles, where he was detained overnight. The next day, September 14th, he was taken to the office of the United States commissioner.

There a United States immigration inspector filed complaint, charging that on September 11th, at or near the town of Chateaugay, Franklin county, in said district, the said King did commit the crime of violation of section 8 of the Act of February 5, 1917, of the Revised Statutes of the United States (evidently the Commissioner's reference to the Revised Statutes of the United States was an inadvertence; the Act of February 5, 1917, referred to, is incorporated in the United States Code as section 144 of title 8, "Aliens and Citizenship"), by willfully, knowingly, wrongfully, and unlawfully, by himself and through another, attempting to bring into the United States, and bringing into the United States, an alien, to wit, Shaye Wittelsohn, a citizen of Russia of Hebrew race, not admitted into the United States, and not possessing a visa or other documents entitling him to enter. The offense charged is a misdemeanor. It is so defined by statute. The complaint does not contain any facts, except as above stated. No claim is made that any of the statements contained in the complaint were personally known by the officer. The records of the commissioner show that a warrant was issued and King arrested by a deputy United States marshal and arraigned before the commissioner. King was not represented by counsel. The records of the commissioner show that upon arraignment King waived examination and was held to answer to the District Court, and bail was fixed at $10,000. In default of bail, King was committed to the Franklin county jail.

Thereafter, and on October 1, 1928, King petitioned for a writ of habeas corpus, which was allowed. Return was duly made, and traverse to the return filed. King was released on bail pending hearing and decision. After the issuance of the writ, and prior to the hearing had on the issues, an indictment against the said King was presented in the District Court. He has not been apprehended or arraigned on the indictment, and is not held thereunder.

The relator bases his claim of illegal arrest and detention upon three grounds, briefly characterized as follows:

(1) That he is a citizen and resident of the Dominion of Canada, and while in the Dominion of Canada, on the 13th of September, 1928, was seized by United States officials and forcibly and against his will brought into the United States and here restrained of his liberty.

(2) That the United States commissioner did not acquire jurisdiction over his person, because of the said alleged illegal seizure and detention, and also because the complaint, based wholly upon hearsay, is insufficient at law to charge any crime.

(3) That petitioner was not apprised of his alleged rights to obtain counsel and have an examination, and that, therefore, he did not legally waive examination and consent to be held for the action of the United States District Court.

Consideration is first given to that part of the second ground or claim of illegal detention; i. e., that the complaint is insufficient at law to confer jurisdiction. The commission of a crime must be shown by facts positively stated before a commissioner has jurisdiction to issue a warrant of arrest. This protection is guaranteed to every person by the Constitution (Fourth Amendment) through the provision that "no warrant shall issue, but upon probable cause, supported by oath or affirmation." This safeguard of liberty has been jealously protected by all courts. And well it should be, for it would be intolerable to allow a warrant of arrest to be issued upon the opinion, conclusion, or suspicion of some person, unsupported by facts. The "oath or affirmation" required is of facts, not opinions or conclusions. The complaint must be supported by proof, so that the magistrate may exercise his judgment or discretion in determining that an offense has been committed, and that there is probable cause to believe the accused guilty of the commission thereof. If the complaint is made on information and belief, it must give the grounds of belief and sources of information. A complaint not based upon the complainant's personal knowledge, and unsupported by other proof, confers no jurisdiction upon the commissioner to issue a warrant. U. S. v. Baumert (D. C.) 179 F. 735; U. S. v. Wells (D. C.) 225 F. 320; U. S. v.

Ruroede (D. C.) 220 F. 210; In re Blum, 9 Misc. Rep. 571, 30 N. Y. S. 396.

In this case there is not any claim that the immigration officer, who made the complaint, had any personal knowledge of the commission of the crime charged, or any other crime committed by King on September 11th. This lack of personal knowledge was admitted upon the hearing. The complaint, therefore, becomes nothing more than a statement of the commission of a crime, based upon hearsay. Although made upon the positive oath of the complainant, it is in reality a complaint based upon information and belief, and nothing more. The positive averments of an official as to facts not within his personal knowledge may be enough to protect a commissioner, but they should not be sufficient to confer jurisdiction, in violation of the Constitution and the numerous decisions of the courts. The complaint must, therefore, be held insufficient.

The fact that the records show that relator upon arraignment waived examination, and consented to await the action of the District Court, does not estop him from now questioning the legality or sufficiency of the complaint. A waiver of examination, if one is had, debars a prisoner from thereafter questioning informalities or technical objections to the regularity of the proceeding, but it does not, I think, deprive him of the right to attack a process insufficient to confer jurisdiction. U. S. v. Ruroede (cited above); People ex rel. Perkins v. Moss, 187 N. Y. 410, 80 N. E. 383, 11 L. R. A. (N. S.) 528, 10 Ann. Cas. 309.

In view of the conclusion above stated, it becomes unnecessary to consider the other questions raised in this proceeding.

The writ is sustained, upon the grounds stated, and an order may be submitted upon notice.