## UNITED STATES v. LANGSDALE.
### No. 18594.

United States District Court
W. D. Missouri, W. D.

Oct. 28, 1953.

Edward L. Scheufler, Kansas City, Mo., by Joseph L. Flynn, Asst. U. S. Atty., St. Joseph, Mo., for plaintiff.

Floyd E. Jacobs, John R. Blackford, of Howell, Jacobs & Howell, Kansas City, Mo., for defendant.

DUNCAN, District Judge.

On March 11, 1953 Fred L. Howard, an Assistant United States District Attorney for the Western District of Missouri, filed a complaint before the United States Commissioner for that District, in the Kansas City Division, which is as follows (caption omitted):

"Before me, the undersigned, a United States Commissioner for the Western District of Missouri, personally appeared this day Fred L. Howard, Assistant U. S. Attorney, who, on oath, deposes and says that Robert Clif Langsdale, on or about the 15th day of March, 1947, at Kansas City, Missouri, in the Western Division, Western District of Missouri, did wilfully, knowingly and feloniously attempt to defeat and evade a large part of the income tax due and owing by him to the United States of America for the calendar year 1946 by filing and causing to be filed with the Collector of Internal Revenue for the 6th In-

ternal Revenue Collection District of Missouri at Kansas City, Missouri, a false and fraudulent income tax return wherein he stated that his net income for said calendar year was the sum of $13,204.31 and that the amount of tax due and owing thereon was the sum of $2942.76 whereas as he then and there well knew his net income for said calendar year was the sum of $22,143.47 upon which said net income he owed to the United States of America an income tax of $7,239.32, in violation of Section 145(b) Title 26 USC contrary to the form of the statute in such case made and provided against the peace and dignity of the United States of America.

"And furthermore the said deponent says he has reason to believe and does believe that

"Robert L. Lynch, Revenue Agent, Kansas City, Mo.

"Robert A. Kane, Special Agent, Internal Revenue Dept. Kansas City, Mo.

are material witnesses to the subject-matter of this complaint.

   "/s/ Fred L. Howard
"Subscribed and sworn to before me this 11th day of March, 1953."

A warrant was issued by the United States Commissioner; no summons was issued; the defendant voluntarily appeared and was released on bond. Hearing before the Commissioner was continued from time to time, and before a hearing was held a grand jury was convened; the facts upon which the charge was based were submitted to the grand jury, and an indictment in four counts was returned, alleging a violation of Section 145(b), Title 26 U.S.C. for the calendar years 1946, 1947, 1948, 1949 and 1950.

Thereafter, at a hearing before the Commissioner, the defendant sought to dismiss the complaint on the ground that the facts alleged therein were not within the personal knowledge of the District Attorney, and that the complaint was void for that reason. The Commissioner declined to pass upon the question, which he was justified in doing, and left the question for determination to this court.

On July 15, 1953 the court dismissed said indictment for a defect therein, and the facts were again submitted to the grand jury, and another indictment was returned under date of July 17, 1953 charging the defendant with the violation of the same section of the Internal Revenue Code, for the same years. The defendant has filed motion to dismiss the first count of that indictment, alleging that the complaint as described aforesaid was void and conferred no authority upon the Commissioner to issue a warrant pursuant thereto; that the statute of limitations was not tolled by the filing of said complaint, and expired before the return of the indictment which is the subject of the attack by the defendant.

The question of whether or not the complaint was valid and authorized the Commissioner to issue a warrant is vital in determining whether or not the statute of limitations was tolled by the filing of the complaint and had run before the return of the indictment.

If the complaint was not good, then the statute was not tolled by the filing thereof, and the first count of the indictment for the year 1946 should be dismissed. Defendant cites the Fourth Amendment to the Constitution of the United States, which provides:

"Amendment IV—Searches and Seizures

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

He also cites Rule 3 of the Federal Rules of Criminal Procedure, 18 U.S.C.A., which provides:

"The complaint is a written statement of the essential facts constituting the offense charged. It shall be made upon oath before a commissioner or other officer empowered to commit persons charged with offenses against the United States."

The Government directs the court's attention to Section 3045 Title 18 U.S.C.A. which provides:

"Warrants of arrest for violations of internal revenue laws may be issued by United States commissioners upon the complaint of a United States attorney, assistant United States attorney, collector, or deputy collector of internal revenue or revenue agent, or private citizen; but no such warrant of arrest shall be issued upon the complaint of a private citizen unless first approved in writing by a United States attorney."

██ The defendant charges that Fred L. Howard, who filed the complaint, had no personal knowledge of the facts recited in the complaint. The law seems to be well settled that one who signs a complaint must have personal knowledge of the facts set out therein, before the Commissioner is authorized to issue a warrant. There are numerous cases on the subject. A clear and concise statement of the rule appears in U. S. ex rel. King v. Gokey, D.C., 32 F.2d 793, at page 794 where the court stated:

"Consideration is first given to that part of the second ground or claim of illegal detention; i. e., that the complaint is insufficient at law to confer jurisdiction. The commission of a crime must be shown by facts positively stated before a commissioner has jurisdiction to issue a warrant of arrest. This protection is guaranteed to every person by the Constitution (Fourth Amendment) through the provision that 'no warrant shall issue, but upon probable cause, supported by oath or affirmation.' This safeguard of liberty has been jealously protected by all courts. And well it should be, for it would be intolerable to allow a warrant of arrest to be issued upon the opinion, conclusion, or suspicion of some person, unsupported by facts. The 'oath or affirmation' required is of facts, not opinions or conclusions. The complaint must be supported by proof, so that the magistrate may exercise his judgment or discretion in determining that an offense has been committed, and that there is probable cause to believe the accused guilty of the commission thereof. If the complaint is made on information and belief, it must give the grounds of belief and sources of information. *A complaint not based upon the complainant's personal knowledge, and unsupported by other proof, confers no jurisdiction upon the commissioner to issue a warrant.* U. S. v. Baumert, D.C., 179 F. 735; U. S. v. Wells, D.C., 225 F. 320; U. S. v. Ruroede, D.C., 220 F. 210." (Emphasis supplied.)

At the hearing before the Commissioner, the defendant caused Mr. Howard to be sworn as a witness, and he testified as follows:

"Q. And you are the affiant in a certain complaint that was filed on the 11th day of March, 1953, entitled 'United States against Robert Clif Langsdale'? A. Yes, sir.

"Q. Mr. Howard, did you make the investigation in this case? A. No, sir.

"Q. You received information from persons who purported to make the investigation. A. Yes, sir.

"Q. Did you personally examine the books of the bank or banks in which the accounts of the defendant Langsdale were kept? A. No, sir.

"Q. Did you examine his checks? A. The originals, no, sir.

"Q. Did the assistant, did the representatives of the government, whoever they may be, and they are numerous, did they inform you of what they discovered with respect to the bank accounts and records of the defendant? A. Yes, sir.

"Q. And that's where you got your information? A. Not entirely.

"Q. To that extent? A. I have the information in their reports, yes.

"Q. And I'm asking you again, whether you personally examined the ledgers, the bank accounts and the bank sheets of the banks of this city where the accounts of this defendant were kept. A. No, sir.

"Q. Now, you say you had other information besides. What was it and what is it? A. The admissions of the defendant.

"Q. What did he admit? A. That he had left out considerable income from his reports.

"Q. What else did he admit? A. He mentioned one specific item in the year '46 which is in question, a matter of fifteen thousand which was reported as fifteen hundred.

"Q. Any other admissions? A. The general admissions that he had, he was familiar with the items involved and he had failed to report. He didn't say all of them but he had failed to report considerable amounts of them.

"Q. Certain items unnamed, I mean he was generalizing according to your statement. A. Generalizing, yes, sir.

"Q. Therefore, are you familiar with whether or not items that were eliminated or left out, from your examination yourself of the records, represented income or reimbursement for expense? Do you know? Have you examined the books of account of the banks with respect to that matter? A. No.

"Q. So, Mr. Howard, you are unable to say with respect to the specific items alleged in here as to whether or not those items constituted income or, it might develop, reimbursements for expense, are you? A. Well, let me put is this way: I'm able to say that the defendant, that is, as to personal knowledge, it is kind of hard to separate that from what I know otherwise, admitted that he had items coming in to him that were not reported in his income tax return and had not been accounted for.

"Q. But those specific items you are unable to identify? A. No, one specific item of the difference between fifteen thousand and fifteen hundred, which is thirteen thousand five hundred dollars.

"Q. Except that item? A. That is the only specific item I can mention at the moment.

"Q. Do you know whether that item is considered in this complaint? A. You mean in the computation of the complaint?

"Q. Yes, in this complaint. A. It is not.

"Q. So it is not involved in the complaint at all? I didn't think it was from the figures as I examined them. A. That's right.

"Q. So that with respect to the complaint upon which this warrant of arrest was issued, Mr. Howard, you have no personal knowledge, have you? A. Except the admissions of the defendant.

"Q. And that was on an item? A. That was on that specific item and general admissions.

"Q. I know, but let's get to it. That was on an item not excluded in this complaint? A. That's right."

Mr. Howard further testified that the witnesses whose names appeared in the complaint would testify to certain matters which had been learned by them in

their investigation; that they were placed there because it was customary to do so; that before signing the complaint, he had gone over certain photostats of checks of the defendant which were in his possession and which had been given to him by the agents, and were a part of the files in his office; that he did not have the "investigating file" in his possession.

The law is not clear as to just what personal knowledge may be necessary in order to enable the District Attorney to sign a complaint. A reading of the transcript indicates to me that Mr. Howard had no personal knowledge of the matters contained in the complaint; that the information he had was based upon hearsay obtained from the revenue agents who had made the investigation. It is true he discussed the general subject-matter of the complaint with the defendant and more specifically with respect to a $15,000 item which is not the basis of the complaint. He has no recollection, except in a general way, that there were items received and not accounted for. This of itself would not justify the signing of a complaint, unless such items clearly represented income.

■ It was agreed that Section 3045, supra, authorizing the District Attorney or the Assistant District Attorney or others to sign complaints does not alter the situation that whoever signs the complaint must have the knowledge required by the law to enable them to do so. The defendant had the right to inquire at the hearing concerning Howard's knowledge. U. S. v. Walker, 2 Cir., 1952, 197 F.2d 287. It was also agreed between the parties in oral argument before the court, that the defendant did not waive any of his rights by his appearance before the Commissioner.

■■ It is my conclusion that the United States District Attorney did not have the personal knowledge required to sign the complaint; that it did not justify the issuance of the warrant, and that the statute of limitations was not tolled by the filing of said complaint;

that the statute of limitations had run before the return of the indictment by the grand jury.

Therefore, the motion to dismiss the first count thereof is hereby sustained.